By the Court.
 

 The petition herein, drawn by rela
 
 *603
 
 tor himself, cannot be said to comply with Section 11305, General Code, wbicb provides that tbe petition must contain a statement of facts constituting a cause of action in ordinary and concise language. The relator has set forth history and legislation covering a period of tbe past 30 years. Much of this is irrelevant. Tbe claims asserted are equivocal and alternative.
 

 Epitomized, relator alleges:
 

 That on February 5, 1920, be was “duly appointed by tbe Board of Health of tbe Portsmouth City Health District to tbe position or office of inspector of plumbing” and “that be continued to perform tbe duties of tbe position of office vested therein by tbe laws of tbe state of Ohio, until tbe sixth day of July, 1940”; that on January 9, 1932, be was appointed temporary clerk of said board of health, wbicb duties be performed until tbe first day of March 1932, at which time tbe duties of clerk and plumbing inspector were combined, wbicb combined duties relator continued to perform until the sixth day of July 1940; that on or about March 1, 1932, be ‘ ‘ assumed tbe duties of secretary of tbe board of health” of tbe Portsmouth City Health District, and on March 5, 1932, be assumed also tbe “office of local registrar” of vital statistics for tbe combined Primary Registration District No. 1160 of tbe state of Ohio; that in addition to tbe other positions under said board of health, be was required to act as sanitary officer from January 1931 until tbe sixth day of July 1940; and that at a meeting of tbe board of health for tbe Portsmouth City Health District, held on April 1,1940, tbe following action was taken by said board:
 

 “Howard C. Feyler moved that tbe health commissioner, clerk-sanitary officer-plumbing inspector, tbe registrar of vital statistics, and tbe supervisor of nurses be discharged effective immediately. Tbe motion was seconded by J. W. Hutchens. Tbe question
 
 *604
 
 being called, Messrs. Hutchens, Feyler and Robertson voted yea, and Messrs. DeBoer and Questel voted nay. The motion was agreed to.”
 

 This is followed by the allegation:
 

 “Your relator says that the above-noted majority members of said board, did corruptly and fraudulently conspire and agree with each other, and with divers other persons who were interested in securing the discharge or dismissal of the relator; that no complaint was made against him; that he was summarily removed from his position or office without- a hearing; that the dismissal of relator without cause, was an arbitrary abuse of discretion, and was not in good faith.
 

 “Your relator says that an alleged successor as inspector of plumbing-clerk-sanitary officer was appointed by the said board of health on the second day of April, 1940; and that on the ninth day of July, 1940, the said board of health appointed the same person as alleged successor to the office of local registrar of vital statistics for the combined registration district, No. 1160, of the state of Ohio.”
 

 The relator then' alleges that in the charter of the city of Portsmouth, effective January 1, 1930, it was provided,
 
 inter alia:
 

 “Section 84. All persons who, at the time this charter takes effect, are holding positions in the service of the city pursuant to appointment from eligible lists, or who have been continuously in the service of the city in the same position for the proceeding [sic] five years, shall be deemed to hold such position as though appointed in accordance with the provisions of this charter. * *
 
 * ”
 

 “Section 86. The city shall through such officer or officers as may be provided for by ordinance, enforce all the laws and ordinances relating to health, and such officer or officers shall perform all the duties and may exercise all the powers relative to the public health provided by general law to be performed and exercised
 
 *605
 
 in municipalities by health officers. All regulations for the protection or promotion of the public health, additional to those established by general law and for the violation of which penalties are imposed, shall be made by ordinance and enforced as provided in this section.”
 

 Relator then proceeds to aver: “Your relator says that the city of Portsmouth does not have a building department, nor does it otherwise exercise the power to regulate the erection of buildings. Your relator says that the laws of the state of Ohio specially places
 
 [sic]
 
 the duty on the Board of Health of the Portsmouth City Health District, the defendants herein to enforce the laws of the state pertaining to sanitary plumbing within the limits of the said city health district * * *.”
 

 Relator prays that a writ of mandamus issue, commanding the Board of Health of the Portsmouth City Health District forthwith to restore the relator to the position of inspector of plumbing in the city health district, and forthwith to restore him to the office of local registrar of vital statistics of registration district No. 1160 of the state of Ohio.
 

 It is not clear whether relator claims to have been, at the time of his removal, an officer or employee under a board created pursuant to the municipal charter, or an appointee of a district board of health.
 

 An office of inspector of plumbing under the board of health was created by the Portsmouth city charter, according to the allegations of the petition. Neither the legislation creating health districts (Section 1261-16
 
 et seq.,
 
 General Code) nor the legislation authorizing municipalities to establish boards of health (Section 4404
 
 et seq.,
 
 General Code), all of which legislation was revised in a single act (108 Ohio Laws, part 2, 1085
 
 et seq.),
 
 provides, or provides for the creation of, the office of inspector of plumbing.
 

 Section 1261-22, General Code, provides for the employment,
 
 upon the recommendation of the health commissioner,
 
 for whole or part-time service, of a public
 
 *606
 
 health nurse, a clerk, and such additional public health nurses, physicians and other persons as may be necessary for the proper conduct of the board’s work. There is no allegation in the petition that relator was appointed upon the recommendation of the health commissioner.
 

 Section 4408, General Code, provides: “In any city health district, the board of health or person or persons performing the duties of a board of health shall appoint for whole or part-time service a health commissioner and
 
 may
 
 appoint such public health nurses, clerks, physicians, and other persons as they deem necessary.” (Italics ours.)
 

 Section 4411, General Code, provides for the appointment of sanitary officers and public health nurses.
 

 No provision is alleged for the giving of a bond by an inspector of plumbing, except a resolution of the preceding board of health, and none for the taking of an oath, although relator avers: “ That he qualified as such inspector of plumbing by taldng the oath of office, and by furnishing the official bond, as required by the resolution * *
 

 We come to the conclusion from all of the allegations of this lengthy petition that the relator, at the time of his removal, was not an officer, but was an employee of the Board of Health of the Portsmouth City Health District.
 

 Section 1261-22, General Code, provides, in part: “The district health commissioner and other employees of the district board of health may be removed for cause by a majority of the board.” The allegation in the petition “that the above-noted majority members of said board, did corruptly and fraudulently conspire and agree with each other, and with divers other persons who were interested in securing the discharge or dismissal of the relator,” even if considered as an allegation of fact rather than a legal conclusion, is not equivalent to saying that relator was discharged with
 
 *607
 
 out cause. The resolution discharging relator also discharged the health commissioner and supervisor of nurses. While there is no direct allegation that the relator was removed without cause, such claim is inferentially made in the following language of the petition: “That the dismissal of relator without cause was an arbitrary abuse of discretion, and was not in good faith. ’ ’
 

 While we would be inclined to hold that the allegations of the petition are sufficient to show the relator was discharged without cause, such a holding would be useless in the absence of an allegation in the petition showing that relator was appointed upon the recommendation of the health commissioner. Unless relator can allege and prove that he was, in fact, appointed upon the recommendation of the health commissioner, he would have no standing as an employee of the district board of health.
 

 It is difficult to tell from this petition whether relator is relying upon a civil service status or upon the ground that he is an officer and outside of civil service. In his brief, relator says: ‘ ‘ The relator is not contending that he held his employment solely ‘subject to the civil service provisions of the city of Portsmouth.’ ” Relator argues in his brief: “Under the provisions of the Hughes-Griswold Act, municipal boards of health were automatically abolished, and in their stead health districts boards of health were created, ’ ’ and cites and quotes Section 1261-16 and Section 1261-30, General Code. He follows these citations with the argument: “The powers and duties of general and city health districts boards of health are the same. The only difference is in the appointing authority of the members of the boards, and this is made necessary by the reason of the difference in the governmental arrangement of the political subdivisions of the general district and city district. ’ ’
 

 The best that we can make out of relator’s petition
 
 *608
 
 is that the local board .of health was succeeded by a district board of health. While in the caption of his petition relator names individuals only, the second paragraph of his petition is as follows: “The defendants are the duly appointed, qualified and acting members of the Board of Health of the Portsmouth City Health District, and as such they constitute the Board of Health of the Portsmouth City Health District.”
 

 In the case of
 
 State, ex rel. Mowrer,
 
 v.
 
 Underwood et al., Akron Civil Service Commission,
 
 137 Ohio St., 1, 27 N. E. (2d), 773, it was held: “When the state, by legislative enactment, withdraws from cities the health powers previously granted to them and transfers them to newly created city health districts, such health districts become agencies of the state government, and their employees are governed by state law.” In the course of the opinion in that case, it was said (at page 7):
 

 “The Griswold Act (108 Ohio Laws, part 2, 1085) amended the above section and omitted therefrom all language having reference to civil service, thereby manifesting a legislative intent, as clearly as if ex-pres.sed in language, that employees of the health district are to be exempt from the operation of civil service requirements. The Legislature did so, obviously on the theory that it is not practicable to ascertain the merit and fitness of the employees of such districts by competitive civil service examinations. In such determination we find no abuse of legislative authority.
 

 “We hold that where the state, by legislative enactment, withdraws from cities the health powers previously granted to them and transfers them to newly created city health districts, such health districts become agencies of the state government, and their employees are governed by state law. ’ ’
 

 Not only is the claim of civil service status equivocal, but it is impossible to determine whether the allegations refer to a municipal or the state civil service. The
 
 *609
 
 petition contains no allegation of compliance by relator with the administrative remedies, if any, provided in the municipal charter, or with Section 486-17a, General Code. Neither do the allegations of the petition bring relator within Section 486-31, General Code.
 

 We are of the opinion that the allegations of the petition are insufficient to show that relator was either an officer, a properly appointed employee of a district health board, or that at the time of his removal he enjoyed the status of a civil service employee, municipal or state.
 

 Respondents’ demurrer must, therefore, be sustained.
 

 Leave will be granted to amend.
 

 Demurrer sustained.
 

 Weygandt, C. J., Turner, Williams, Matthias, Hart, Zimmerman and Bettman, JJ., concur.